IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| WATAUGA COUNTY VOTING RIGHTS TASK FORCE; COMMON CAUSE; DR. RAY RUSSELL; LARRY TURNBOW; CHARLIE WALLIN; DR. JAMES FENWICK, JR.' LAURIE FLEMING; PATRICIA DALE; and KINNEY RAY BAUGHMAN,<br><br>    Plaintiffs,<br><br>v.<br><br>WATAUGA COUNTY BOARD OF ELECTIONS; ERIC ELLER, in his official capacity as a member of the Watauga County Board of Elections; TERRY CIRONE, in her official capacity as a member of the Watauga County Board of Elections; PAMELA HUSS CLINE, in her official capacity as a member of the Watauga County Board of Elections, ELAINE ROTHENBERG, in her official capacity as member of the Watauga County Board of Elections, and LETA COUNCILL, in her official capacity as member of the Watauga County Board of Elections,<br><br>    Defendants. | Case No. 5:25-cv-00157-KDB-DCK |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY PRESIDENT PRO TEMPORE PHILIP E. BERGER AND SPEAKER DESTIN C. HALL

Proposed Intervenors Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Destin C. Hall, in his official capacity as Speaker of the North Carolina House of Representatives (the "Proposed Intervenors") seek to intervene as defendants on behalf of the General Assembly to defend North Carolina Senate Bills 759 ("S.B. 759") and 912 ("S.B. 912"). The Proposed Intervenors have a clear interest in upholding the validity of state statutes designed to reapportion districts and regulate election activity in the State. Despite the

allegations in the Complaint being largely aimed at the General Assembly's enactments of S.B. 759 and S.B. 912, Plaintiffs chose not to sue Proposed Intervenors, who are in the best position to defend the validity of the laws in question.

North Carolina law expressly permits intervention by the President *Pro Tempore* of the Senate and the Speaker of the House of Representatives on behalf of the General Assembly as a matter of right in any action challenging a North Carolina statute. N.C. Gen. Stat. §§ 1-72.2, 120-32.6. The Supreme Court of the United States recently held that this law plainly authorizes intervention by these Legislative Defendants in a case like this. *See Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022) (granting intervention to the same proposed intervenors in this matter to defend the constitutionality of another North Carolina statute because proposed intervenors are the State's statutorily authorized agents). Moreover, in *Berger*, the Supreme Court specifically recognized the Proposed Intervenors' significant protectable interest in protecting valid North Carolina laws and potential impairment if they are blocked from participating in a lawsuit about the validity of North Carolina laws under Rule 24(a). *Id.* Thus, Proposed Intervenors are entitled to intervene as a matter of statutory right and as a matter of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, to intervene permissively under Rule 24(b).

Simply put, the Watauga County Board of Elections did not pass the two statutes at issue here. Plaintiffs bring intent-based claims[1], which requires evidence from the legislative body that actually enacted the laws at issue. As such, any defense by the named defendants in this case cannot be fulsome because they lack the necessary information to adequately assess and defend Plaintiffs' intent claims. S.B. 759 and S.B. 912, like all other legislation enacted by the people's

---

[1] For example, Plaintiffs' second cause of action alleges the General Assembly intentionally discriminated against Watauga County voters in the passage of Senate Bill 912 [D.E. 1 at pp. 29-31].

chamber, are entitled to a vigorous defense. To ensure that occurs, the Court should grant Proposed Intervenors' motion to intervene.

## STATEMENT OF FACTS

On October 25, 2023, the North Carolina General Assembly ratified S.B. 759 (N.C. Sess. Law 2023-147) which established five single-member electoral districts for the Watauga County Board of County Commissioners. Under S.B. 759, one member is elected for each of the five districts in staggered elections. The purpose of S.B. 759 was to replace the prior countywide system for the Board of County Commissioners with single-member districts, such that commissioners now must be elected only by qualified voters residing in their respective districts.

On June 27, 2024, the North Carolina General Assembly ratified S.B. 912 (N.C. Sess. Law 2024-13) which re-aligned the Watauga County Board of Education districts to match the Watauga County Board of County Commissioners districts, and provided that any referendum involving alteration to the structure of the Watauga County Board of Commissioners cannot take effect until after 2032.

Plaintiffs the Watauga County Voting Rights Task Force, Common Cause, Dr. Ray Russell, Larry Turnbow, Charlie Wallin, Dr. James Fenwich, Jr., Laurie Fleming, Patricia Dale, and Kinney Ray Baughman filed a Complaint on October 1, 2025, seeking a declaration under the United States Constitution and 42 U.S.C. § 1983, that S.B. 759 and S.B. 912 are unconstitutional under the First and Fourteenth Amendments.

## STATEMENT OF THE QUESTION PRESENTED

Should the Court grant the Proposed Intervenors' Motion to Intervene under Federal Rule of Civil Procedure Rule 24 either as of right or as permissive intervention?

**ARGUMENT**

The Court should grant Proposed Intervenors' Motion and allow them to intervene as defendants in this matter to defend S.B. 759 and S.B. 912. Proposed Intervenors are entitled to intervention as of right under Rule 24(a) or, in the alternative, because they satisfy the requirements of permissive intervention under Rule 24(b). The Court should also allow Proposed Intervenors to appear at any hearings or conferences necessary to defend S.B. 759 and S.B. 912 that may be scheduled before the Court can rule on the instant motion.

**I. The Proposed Intervenors are Entitled to Intervene as of Right.**

Federal Rule of Civil Procedure 24(a) requires a court to permit anyone to intervene who, (1) "[o]n timely motion," (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," (3) "unless existing parties adequately represent that interest." *Berger*, 142 S. Ct. at 2200–01 (quoting Fed. R. Civ. P. 24(a)); *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). "Liberal intervention is desirable" to ensure that cases include "as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citations omitted).

A. <u>Proposed Intervenors' Motion is Timely.</u>

Courts look to three factors to determine whether a motion to intervene is timely: (1) "how far the underlying suit has progressed"; (2) any "prejudice" that granting the motion would cause to the other parties; and (3) any justification for any delay in filing the motion by a proposed intervenor. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). Proposed Intervenors meet each factor. Plaintiffs filed the Complaint on October 1, 2023. [D.E. 1]. Defendants filed a motion for extension of time to answer or otherwise respond to the Complaint on October 16, 2025 [D.E. 11],

which was granted [D.E. 14]. Responses to the Complaint are now due on November 14, 2025, and no named defendants have responded with an answer or substantive motion. [D.E. 14]. The Proposed Intervenors have expeditiously sought intervention, and no prejudice will result from allowing their intervention during the pleading stage of litigation, especially because no defendant has filed any answer or substantive motion yet. *See Voto Latino, et al. v. Hirsch, et al.*, Case No. 1:23-CV-861, D.E. 68 (M.D.N.C. Jan. 21, 2024) (referencing text order granting intervention by legislative leadership prior to plaintiffs' motion for preliminary injunction); *Carcano v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016) (granting the motion to intervene of Senator Berger and Speaker Moore when the motion was filed before progression past the pleadings stage); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *2 (M.D.N.C. Jan. 27, 2014) (finding motion to intervene in a voting rights case timely because it was filed "well before the scheduling order's ... deadline for amendments to pleadings").

B. <u>Significant Protectable Interests.</u>

"States possess a legitimate interest in the continued enforce[ment] of [their] own statutes" which "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law…" *Berger,* 142 S. Ct. at 2194-95. The Proposed Intervenors, as leaders in the state legislative body that enacted the law, have a significant, protectable interest in the enforcement of duly enacted state statutes, enacted according to the express command of the people of North Carolina. *Id.* at 2206.

> In fact, the State of North Carolina has expressly authorized intervention in such cases:
>
> the Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice, including private counsel, shall jointly have standing to intervene on behalf of the General

Assembly as a party in any judicial proceeding challenging a North Carolina statute . . . .

N.C. Gen. Stat. § 1-72.2.

The U.S. Supreme Court recently applied this statutory provision to permit intervention by the same Proposed Intervenors to defend the constitutionality of another North Carolina statute. *Berger*, 142 S. Ct. at 2200-01. The Supreme Court recognized that state law affirmatively authorized the legislative leadership to intervene as the state's agents to protect legal challenges against the state's laws, giving them a significant protectable interest that may be impaired whenever a state statute is challenged. *See Id*.

Even before *Berger,* courts around the country had recognized the right of state legislatures to intervene as of right, due to the protectable interests in defending election related laws. *See Robinson v. Ardoin,* Nos. 22-211-SDD-SDJ, 22-214-SDD-SDJ, 2022 WL 1154607, at *3 (M.D. La. Apr. 19, 2022) (granting legislators' motion for intervention as of right after finding elements of Rule 24(a) met, including finding a legitimate interest that "leaders of the legislative bodies that enacted the challenged maps have an interest in participating in a process where the various policy choices and judgments that went into creating the maps will be scrutinized."); *Nairne v. Ardoin,* No. 22-178-SDD-SDJ, 2022 WL 1559077, at *2 (M.D. La. May 17, 2022) (granting legislators' motion for intervention as of right after finding elements of Rule 24(a) met, including finding a legitimate interest of "defend[ing] the merits of the redistricting plans passed by the Legislature."); *Swenson v. Bostelmann,* No. 20-cv-459, 2020 WL 8872099, at *1 (W.D. Wis. June 23, 2020) (granting state legislature intervention as of right in election law-related case reasoning that "the Legislature has an interest in the continued enforceability of its laws"); *see also Miss. State Conf. of N.A.A.C.P. v. Barbour,* No. 3:11-cv-00159, 2011 WL 1327248, at *2-3 (S.D. Miss. Apr. 1, 2011) (finding that the Mississippi House of Representatives Apportionment and Elections

Committee, which had voted on and approved a district apportionment plan that was the subject of the plaintiff's challenge, had the right to intervene in redistricting case); *Karcher v. May,* 484 U.S. 72, 77 (1987) (recognizing that "presiding officers" of state legislature had authority to intervene in lawsuit challenging state legislation); *cf. League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 884 F.2d 185, 188 (5th Cir. 1989) (noting that parties who play a "part in creating or revising the election scheme" meet the "real party in interest" test).

Consistent with the opinions above, in *Berger*, the Supreme Court recognized that "the State has made plain that it considers the leaders of the General Assembly 'necessary parties' to suits like this one [challenging a state statute]." *Id.* at 2203 (citing § 120– 32.6(b)). The Court held "where a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Id.* at 2203.[2] Moreover, the Court in *Berger,* even found that the interest in defending the election law was separate from the Board of Election's interest. *Id*. at 2205. The facts and the law in the instant case warranting intervention are no different than those raised in *Berger.* Thus, *Berger* definitively resolves the question of the Proposed Intervenors' significantly protectable interest and its potential impairment, in favor of intervention.

C. Interests Not Adequately Represented.

A presumption of adequate representation "'is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Berger*, 142 S. Ct. at 2204. Proposed Intervenors

---

[2] Under constitutional challenges, neither parties nor the court can substitute their "own social or economic beliefs for the judgment of legislative bodies, who are elected to pass the laws." *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028, 1031 (1963). *See also Dobbs v. Jackson Women's Health Org.,* 142 S. Ct. 2228, 2284 (2022*); Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 365–368, 121 S. Ct. 955 (2001).

satisfy the inadequate representation requirement on a mere showing that representation of its interests "'may be' inadequate" and the burden of showing that is minimal. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *accord In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991). The Proposed Intervenors satisfy that low burden here.

Defendants the Watauga County Board of Elections and its members did not enact S.B. 759 or S.B. 912. Defendants have distinct interests from those of the actual legislative body that enacted the challenged laws. Plaintiffs bring several intent-based claims, which requires evidence from the legislative body that actually enacted the laws at issue. *N. Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 303-04 (4th Cir. 2020) (describing burden of proof for discriminatory intent claims). As such, any defense by the named defendants in this case cannot be fulsome because they lack the necessary information to adequately assess and defend Plaintiffs' intent claims.

Even if the named Defendants in this case purport to defend S.B. 759 and S.B. 912, they are not legislative leaders like the Proposed Intervenors here, who would vigorously mount a defense to the law they passed[3]. Indeed, state law specifically contemplates that "[i]t is the public policy of the State of North Carolina that in any action in any federal court in which the validity or constitutionality of an act of the General Assembly or a provision of the North Carolina Constitution is challenged, the General Assembly, jointly through the Speaker of the House of Representatives and the President Pro Tempore of the Senate, constitutes the legislative branch of the State of North Carolina[.]" N.C. Gen. Stat. § 1-72.2(a).

---

[3] Recently in *Voto Latino, et al. v. Hirsch, et al.*, Case No. 1:23-CV-861, D.E. 50 (M.D.N.C. Dec. 13, 2023), the Watauga County Board of Elections and its members (the "Watauga County Defendants") took no position on plaintiffs' motion for preliminary injunction that sought to enjoin the same-day registration provisions of S.B. 747. There, the Court granted legislative leaders' intervention via text order "to oppose Plaintiffs' claims and to represent the interests of the North Carolina General Assembly[.]" *Voto Latino, et al. v. Hirsch, et al.*, Case No. 1:23-CV-861, D.E. 68 (M.D.N.C. Jan. 21, 2024).

This is further laid out in the next section of that statute:

> The Speaker . . . and the President Pro Tempore of the Senate, as agents of the State, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution.

N.C. Gen. Stat. § 1-72.2(b). Thus, the Proposed Intervenors should be allowed to represent their specific perspective as participants in this lawsuit that could change enacted state laws, without regard to what perspective any county board of elections officials may have or strategy they pursue.

Proposed Intervenors intend to offer a vigorous defense of S.B. 759 and S.B. 912. As such, the Court should grant the Motion to Intervene and allow Proposed Intervenors to intervene and defend S.B. 759 and S.B. 912.

## II. In the Alternative, Permissive Intervention is Warranted.

While the Proposed Intervenors respectfully submit they are entitled to intervene as of right, in the alternative, the Court should grant them permissive intervention. Under Rule 24(b), the Court "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(B).

An applicant for permissive intervention need not show a significant protectable interest or inadequacy of representation. Rather, the applicant need only show that (1) the intervention request is timely filed, (2) the applicant "has a claim or defense that shares with the main action a common question of law or fact," and (3) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B).

The Proposed Intervenors satisfy each of those here. First, for the same reasons detailed above, the Proposed Intervenors' Motion is timely. Second, the Proposed Intervenors will present a defense "that shares with the main action a common question of law or fact"—namely, that S.B.

759 and S.B. 912 are constitutionally permissible methods of regulating the Watauga County Board of Commissioners and School Board districts. Third, no undue delay or prejudice will result from allowing the Proposed Intervenors to intervene at this extremely early stage in litigation. Because all of these factors are met, permissive intervention is proper here, in the alternative. *See Carcano*, 315 F.R.D. 176, 179 (M.D.N.C. 2016) (because the defenses of the proposed intervenors largely overlap with the factual issues present in the action, and would not significantly complicate proceedings, intervention was warranted); *see also People for Ethical Treatment of Animals, Inc. v. Stein,* No. 1:16CV25, 2019 WL 9662884, at *3 (M.D.N.C. May 14, 2019) (holding the same); *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 764, 766-67 (E.D. Mich. 2020) (granting legislatures' permissive intervention when the legislature seeks to intervene in a challenge to an election law in order to protect and defend enacted law of the state); *Hunter v. Bostelmann*, No. 21-cv-512, 2021 WL 3856081, at *1-2 (W.D. Wis. Aug. 27, 2021) (granting permissive intervention by Wisconsin Legislature in redistricting case where the legislature was responsible for drawing legislative districts); *see also League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 580 (6th Cir. 2018) (holding district court abused its discretion in denying a permissive intervention of legislators).

## **CONCLUSION**

For these reasons, the Proposed Intervenors respectfully request that the Court grant their Motion to Intervene, and to participate in any hearings or conferences scheduled by the Court prior to the ruling on this motion. Counsel for Proposed Intervenors intend to confer with all counsel and promptly participate in an initial settlement conference, as required by the Honorable Kenneth D. Bell's Standing Order Requiring an Initial Settlement Conference in Civil Cases.

Respectfully submitted, this the 31st day of October, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: __/s/ Phillip J. Strach_____
Phillip J. Strach (NCSB # 29456)
Alyssa M. Riggins (NCSB # 52366)
Cassie A. Holt (NCSB # 56505)
Jordan A. Koonts (NCSB #59363)
Kacie T. England (NCSB #62343)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
Facsimile: (919) 329-3779
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
jordan.koonts@nelsonmullins.com
kacie.england@nelsonmullins.com

## CERTIFICATE CONCERNING USE OF ARTIFICIAL INTELLIGENCE

The undersigned hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 31st day of October, 2025.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:/s/ Phillip J. Strach
    Phillip J. Strach
    North Carolina State Bar No. 29456

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on all parties to this action by filing the same with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

This the 31st day of October, 2025.

                                      **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                                      By:/s/ Phillip J. Strach
                                              Phillip J. Strach
                                              North Carolina State Bar No. 29456